UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ALIREZA HAMEDANI, | CASE NO. 2:25-cv-02509-JNW-TLF |
| Petitioner, | ORDER |
| v. | |
| PAMELA BONDI et al., | |
| Respondents. | |

This matter comes before the Court on Petitioner Alireza Hamedani's motion for a temporary restraining order. Dkt. No. 2. He asks the Court to order his immediate release from custody and to prohibit his re-detention without court approval. *Id*. Hamedani also moved for an Order to Show Cause with expedited briefing on his underlying habeas corpus petition. Dkt. No. 1-1. For the reasons below, the Court DENIES Petitioner's request for immediate release but GRANTS his request for expedited habeas proceedings.

Petitioner Hamedani is a citizen of Iran. Dkt. No. 1 ¶ 6. He alleges that in 2018, U.S. Immigration and Customs Enforcement (ICE) took him into custody pursuant to a final order of removal, but that ICE released him on an order of

ORDER - 1

supervision after 90 days. *Id*. On August 27, 2025, ICE re-detained Hamedani. He is presently detained in the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. *Id*.

On December 8, 2025, Hamedani petitioned for a writ of habeas corpus, contending that his re-detention violates *Zadvydas v. Davis*, 533 U.S. 678 (2001), because (1) his cumulative detention exceeds six months, (2) there is no significant likelihood of removal to Iran in the reasonably foreseeable future, and (3) he was denied due process. Dkt. No. 1 at 4–7. That same day, he moved for a temporary restraining order seeking, among other things, his immediate release from custody. Dkt. No. 2. Despite notice of the TRO motion, Respondents have not signaled an intent to oppose Hamedani's request for immediate injunctive relief.

Federal Rule of Civil Procedure 65 empowers district courts to issue temporary restraining orders ("TRO"). Fed. R. Civ. P. 65(b). Like a preliminary injunction, a TRO is "an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008); *see also Washington v. Trump*, 847 F.3d 1151, 1159 n.3 (9th Cir. 2017) (the standards applicable to TROs and preliminary injunctions are "substantially identical"). The Court will not "mechanically" grant an injunction for every violation of law. *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 313 (1982). Instead, plaintiffs seeking a TRO must establish that (1) they are "likely to succeed on the merits," (2) they are "likely to suffer irreparable harm in the absence of preliminary relief," (3) "the balance of equities tips in [their] favor," and (4) "an injunction is in the public interest." *Winter*, 555 U.S. at 20. But "where the 'balance of hardships ... tips sharply towards the

ORDER - 2

plaintiff,' a plaintiff need only show 'serious questions going to the merits,' rather than likelihood of success on the merits[.]" *Roman v. Wolf*, 977 F.3d 935, 941 (9th Cir. 2020) (quoting *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011)). The moving party bears the burden of persuasion and must make a clear showing that he is entitled to relief. *Winter*, 555 U.S. at 22.

The petition raises serious questions about whether Hamedani's re-detention violates the presumptive reasonable-time limitation that *Zadvydas* read into 8 U.S.C. § 1231(a)(6). In *Zadvydas*, the Supreme Court held that the post-removal-period detention statute does not authorize indefinite detention; rather, detention is presumptively reasonable for six months, after which the noncitizen may seek release by showing "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." 533 U.S. at 701.

Hamedani contends that his total detention—around 90 days in 2018 plus his current detention since August 27, 2025—exceeds the six-month presumptive period when measured cumulatively. Multiple district courts have held that the six-month period does not reset when the government detains a noncitizen, releases him on supervision, and then re-detains him. *See Nguyen v. Scott*, 796 F. Supp. 3d 703, 721–22 (W.D. Wash. 2025) ("*Nguyen* II") (citing *Sied v. Nielsen*, No. 17-CV-06785-LB, 2018 WL 1876907, at *6 (N.D. Cal. Apr. 19, 2018); *Chen v. Holder*, No. CV 6:14-2530, 2015 WL 13236635, at *2 (W.D. La. Nov. 20, 2015)). As one court observed, permitting the clock to reset would allow "a series of releases and re-detentions … [to] in essence result[ ] in an indefinite period of detention, albeit executed in successive six month intervals." *Chen*, 2015 WL 13236635, at *2.

Hamedani further contends that removal to Iran is not reasonably foreseeable. He alleges that more than seven years have passed since his final removal order without successful removal, that Iran does not have a repatriation agreement with the United States, and that Iran's cooperation is even less likely following the bombing of Iranian facilities in summer 2025. Dkt. No. 1 ¶ 28. These allegations, if credited, could support a finding that removal is not reasonably foreseeable under *Zadvydas*.

The Court expresses no opinion on the ultimate merits of these claims. But Hamedani has raised serious questions going to the merits.

Although Hamedani has raised serious questions, his request for immediate release from detention is the same relief ultimately sought by his habeas petition. As U.S. District Judge Cartwright recently explained in denying the same request at the TRO stage in *Nguyen v. Scott*:

> Because Petitioner's request for release from detention is the same relief ultimately sought by his habeas petition, the Court concludes that it falls outside the limited purpose of a TRO and should instead be decided either after a preliminary injunction hearing or through regular adjudication of the habeas petition itself.

2025 WL 2165995, at *7 (W.D. Wash. July 30, 2025) ("*Nguyen* I"); *see also Chavez v. Murray,* No. 1:25-CV-00198-HBK (HC), 2025 WL 1017678, at *2 (E.D. Cal. Apr. 4, 2025) (denying TRO motion requesting release from detention because this "is precisely the same ultimate relief sought in his underlying [habeas corpus] Petition.").

The Court agrees with this take—while "there could be circumstances where a petitioner's detention is so obviously unconstitutional that release should be

ORDER - 4

granted on an emergency basis," *Nguyen* I, 2025 WL 2165995, at *7, the Court cannot so conclude on the scant record before it. The *Zadvydas* framework contemplates burden-shifting: the petitioner must first show good reason to believe removal is not reasonably foreseeable, *and then* the government gets a chance to rebut that showing with evidence showing otherwise. *See Zadvydas*, 533 U.S. at 701. Here, Respondents have not yet had an opportunity to respond to the petition or to present the rebuttal evidence, if any, contemplated by *Zadvydas*. Before the Court may order Hamedani's release, Respondents must be afforded time and opportunity to respond to his claims.

In sum, Hamedani has raised serious questions about the lawfulness of his continued detention under *Zadvydas*. But his request for immediate release constitutes the ultimate relief sought by his habeas petition and falls outside the limited purpose of a TRO. Expedited habeas proceedings will allow prompt resolution of Hamedani's claims on a full record.

Accordingly, the Court orders as follows:

1. Petitioner's Motion for Temporary Restraining Order, Dkt. No. 2, is DENIED.

2. Petitioner's Motion for an Order to Show Cause and Issue Expedited Briefing is GRANTED. The Court will address the briefing schedule and hearing date in a separate scheduling order.

Dated this 12th day of December, 2025.

Jamal N. Whitehead
United States District Judge

ORDER - 6