UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ALIREZA HAMEDANI,

Petitioner,

v.

PAMELA BONDI et al.,

Respondents.

CASE NO. 2:25-cv-02509-JNW

ORDER GRANTING HABEAS
PETITION

## 1.  INTRODUCTION

Petitioner Alireza Hamedani, a citizen of Iran, is detained by U.S. Immigration and Customs Enforcement (ICE) at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. Dkt. No. 7. Hamedani seeks a writ of habeas corpus under 28 U.S.C. § 2241, requesting (a) immediate release from custody and (b) an order preventing removal to a third country without notice and meaningful opportunity to respond. *Id.*; Dkt. No. 23.

For the reasons stated below, the Court GRANTS Hamedani's petition.

ORDER GRANTING HABEAS PETITION - 1

## 2. BACKGROUND

Hamedani is a citizen of Iran. He is married and has a child. He originally came to the United States in 2014 on a tourist visa, which he overstayed. Dkt. No. 16 ¶ 4. The Department of Homeland Security (DHS) issued a Notice to Appear for removal on January 26, 2018. Dkt. No. 16 ¶ 6. On April 20, 2018, Hamedani was convicted of a felony domestic violence in California and released to ICE custody on June 22, 2018. *Id.* ¶¶ 7, 8. On August 20, 2018, an immigration judge ordered Hamedani removed based on his conviction but also granted him a deferral of removal under the Convention Against Torture (CAT) after finding it more likely than not that he would be tortured if he returned to Iran. *Id.* ¶¶ 9–10. He was released on an Order of Supervision ("OSUP") on August 23, 2018. *Id.* ¶ 10.

On November 21, 2018, Hamedani was convicted of probation violations and again released to ICE custody on December 22, 2018. *Id.* ¶ 11. ICE released him that same day on another OSUP. *Id.* On August 14, 2019, ICE again detained and released him the same day. *Id.* ¶ 12. Before August 2025, Hamedani was in ICE custody for approximately five days total. Dkt. No. 15 at 8.

On July 29, 2025, Hamedani was arrested for allegedly assaulting a federal officer with his car and fleeing during an ICE operation. Dkt. No. 15 at 3; Dkt. No. 16 ¶ 13. That charge was later dismissed without prejudice at the Government's request. Dkt. No. 15 at 3 n.2. On August 21, 2025, ICE took Hamedani into custody and served him with a Notice of Revocation of Release, stating that he was being detained "based on a review of … [his] immigration and criminal history." Dkt. No. 17-5 at 2.

ORDER GRANTING HABEAS PETITION - 2

The Government has submitted the Declaration of Deportation Officer Robert Andron. DO Andron states that ICE "is presently *exploring* [Petitioner's] removal to Germany, Lebanon, and the [United Arab Emirates]." Dkt. No. 16 ¶ 20 (emphasis added). DO Andron states that "[t]hese countries have demonstrated tolerance for Petitioner's faith and have historically issued visas for Iranian passport holders" and that "Petitioner's wife's sister *appears* to live in Germany." *Id.* ¶ 22 (emphasis added). DO Andron also states that Hamedani refused to cooperate with removal efforts, declined to sign two Form I-229(a) Warnings for Failure to Depart, and "refused to cooperate in securing travel documents." *Id.* ¶¶ 21–22.

Hamedani filed this habeas petition pro se on January 5, 2026. Dkt. No. 7. The Government filed its response on January 16, 2026. Dkt. No. 15. Hamedani filed a pro se traverse on January 26, 2026. Dkt. No. 22. But the Federal Public Defender subsequently appeared on Hamedani's behalf and filed a "counseled" traverse on January 29, 2026. Dkt. No. 23. The petition is now fully briefed and ripe for resolution.

## 3.  DISCUSSION

### 3.1   Legal standards.

#### 3.1.1   Habeas relief.

Federal courts have authority to grant writs of habeas corpus to any person held "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Habeas corpus "entitles [a] prisoner to a meaningful opportunity to demonstrate that he is being held pursuant to 'the erroneous

ORDER GRANTING HABEAS PETITION - 3

application or interpretation' of relevant law." *Boumediene v. Bush*, 553 U.S. 723, 779 (2008) (quoting *INS v. St. Cyr*, 533 U.S. 289, 302 (2001)). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody," and thus to warrant relief, a petitioner must demonstrate that his detention is unlawful. *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973); *see Lambert v. Blodgett*, 393 F.3d 943, 969 n.16 (9th Cir. 2004) ("In state collateral litigation, as well as federal habeas proceedings, it is the petitioner who bears the burden of proving his case."); *see also Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004) ("petitioner carries the burden of proving by a preponderance of the evidence that he is entitled to habeas relief" when challenging incarceration by the state under 28 U.S.C. §§ 2254). A district court's habeas jurisdiction extends to challenges to immigration-related detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *Demore v. Kim*, 538 U.S. 510, 517 (2003).

### 3.1.2    Other equitable relief.

Federal courts have "long recognized the existence of an implied cause of action through which plaintiffs may seek equitable relief to remedy a constitutional violation." *Roman v. Wolf*, 977 F.3d 935, 941 (9th Cir. 2020). "Where habeas petitioners raise Due Process claims and have also invoked the Court's jurisdiction under 28 U.S.C. § 1331, the Court has 'the authority both to entertain [the petitioner's] constitutional challenges and to grant injunctive relief in response to them,' 'irrespective of the accompanying habeas petition.'" *See Francisco Lorenzo v. Bondi*, Case No. 2:25-cv-02660-LK, 2026 WL 237501, at *6 (W.D. Wash. Jan. 29,

ORDER GRANTING HABEAS PETITION - 4

2026) (quoting *Roman*, 977 F.3d at 941–42). "Once a [constitutional] right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for breadth and flexibility are inherent in equitable remedies." *Roman*, 977 F.3d at 942 (quoting *Swann v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 1, 15 (1971)). And "[i]n time-sensitive circumstances, the district court's authority to issue broad equitable relief encompasse[s] the authority to grant provisional relief 'to bring an ongoing violation to an immediate halt.'" *Id.* (quoting *Hutto v. Finney*, 437 U.S. 678, 687 n.9, (1978)).

It is well established that plaintiffs seeking equitable relief in the form of permanent injunctions must show: "(1) that [they] ha[ve] suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006); see *Francisco Lorenzo*, 2026 WL 237501, at *6 (applying permanent injunction standard to injunctive relief requested in immigration habeas proceedings).

## 3.2    Continued detention violates Hamedani's due process rights.

Hamedani argues that his continued detention violates due process because there is no significant likelihood he will be removed in the reasonably foreseeable future. The Court agrees.

In *Zadvydas*, the Supreme Court held that 8 U.S.C. § 1231(a)(6) "does not permit indefinite detention." 533 U.S. at 689. Rather, it allows detention only for "a period reasonably necessary to bring about that [noncitizen]'s removal from the United States." *Id.* "[O]nce removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* at 699.

The Court established six months as the "presumptively reasonable" period of post-removal-order detention. *Id.* at 701. After six months, "once the [noncitizen] provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* Importantly, "as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Id.* The Government's burden to justify continued detention thus becomes increasingly demanding over time.

Hamedani is detained under 8 U.S.C. § 1231(a)(6), which authorizes continued detention after the 90-day removal period for certain categories of noncitizens or release under conditions of supervision. *See Zadvydas*, 533 U.S. at 682. His removal order became final on August 20, 2018. Hamedani has been detained since August 21, 2025, with "approximately" five additional days of prior ICE custody. Dkt. No. 15 at 8. The parties dispute when the presumptively reasonable six-month period began—from the final order or from the current period of detention. The Court need not resolve this dispute because under either calculation, the six-month period has now passed.

Hamedani has shown good reason to believe his removal is not significantly likely in the reasonably foreseeable future. The Government concedes that he cannot be removed to Iran. His removal order has been final for more than seven years. The Government identifies Germany, Lebanon, and the United Arab Emirates as potential third countries, but Hamedani has no citizenship in any of them. Aside from a sister-in-law who "appears to live in Germany," Dkt. No. 16 ¶ 22, he has no meaningful connection to these countries. The Government has not shown that any of these countries is willing to accept him, that he meets any eligibility requirements for acceptance, or that it has even contacted them about his case. And the Government provides no timeline for removal. Hamedani has shown there is no good reason to believe his removal is likely to occur in the reasonably foreseeable future.

The Government has not rebutted Hamedani's showing. DO Andron states only that the Government is "exploring" and "pursuing" removal. Dkt. No. 16 ¶¶ 18, 20. Under *Zadvydas*, the Government bears the burden of providing affirmative evidence that removal is reasonably foreseeable—not merely conclusory statements that ICE is "exploring" or "pursuing" the matter. The evidentiary deficiencies in the Andron Declaration are significant. DO Andron does not attest to any facts within his personal knowledge regarding whether consular officials for Germany, Lebanon, or the United Arab Emirates have been contacted, that any of these countries are willing to issue travel documents, or that any negotiations are underway. Instead, he observes that these countries have "demonstrated tolerance for Petitioner's faith and have historically issued visas for Iranian passport holders." But a country's

ORDER GRANTING HABEAS PETITION - 7

previous issuance of visas to Iranian nationals is not evidence that it will accept Hamedani. The Government conflates the absence of evidence of refusal with evidence of cooperation. These are not the same thing. *See Uprety v. Bondi*, No. 2:25-cv-02443-JNW-MLP, 2026 WL 194227, at *3 (W.D. Wash. Jan. 26, 2026).

At most, the Government has shown "there is at least some possibility" that these countries *might* accept Hamedani "at some point." *Abubaka v. Bondi*, No. 25-cv-1889-RSL, 2025 WL 3204369, at *5 (W.D. Wash. Nov. 17, 2025) (quoting *Nguyen v. Scott*, 796 F. Supp. 3d at 725). But as other courts in this district have found, "[t]hat is not the same as a significant likelihood that [the petitioner] will be accepted in the reasonably foreseeable future." *Id.* (quoting *Nguyen*, 796 F. Supp. 3d at 725); *see also Singh v. Gonzales*, 448 F. Supp. 2d 1214, 1220 (W.D. Wash. 2006) (Government failed to meet *Zadvydas* standard on rebuttal because it provided "no substantive indication regarding how or when it expect[ed] to obtain the necessary travel documents" to remove the petitioner).

The Court notes Hamedani's criminal history, which includes a felony domestic violence conviction, probation violations, and an arrest for assaulting a federal officer, a charge the Government dismissed. But the Government does not argue that Hamedani poses a flight risk or a danger to the community. Dkt. No. 15. Having chosen not to raise these arguments, the Government cannot rely on Hamedani's criminal history to justify his continued detention. In any event, *Zadvydas* involved a petitioner with "a long criminal record" and "a history of flight," and another who had been convicted of manslaughter in a "gang-related shooting." 533 U.S. at 684–86. The Supreme Court nonetheless held that Section

ORDER GRANTING HABEAS PETITION - 8

1231(a)(6) did not authorize their indefinite detention. *Id*. at 697; see also *Tuan Thai v. Ashcroft*, 366 F.3d 790, 798 (9th Cir. 2004) ("[A noncitizen's] ill mental health coupled with dangerousness cannot justify indefinite detention under *Zadvydas*").

Because there is no significant likelihood of removal in the reasonably foreseeable future, Hamedani's continued detention is no longer authorized by statute and violates due process. He must be released.

### 3.3    The Government must follow the law regarding third-country removal.

Hamedani's pro se petition asserts a "procedural due process" claim. Dkt. No. 7 at 7. His counseled traverse develops this claim, requesting an order requiring the Government to reopen removal proceedings and provide notice and an opportunity to be heard before removing him to a third country. Dkt. No. 23 at 9–10. Because Hamedani filed his petition pro se, the Court construes this as a procedural due process claim related to the Government's third-country removal policy. *See Boquist v. Courtney*, 32 F.4th 764, 774 (9th Cir. 2022) (courts must "construe the pleadings liberally" for pro se filings and "afford the petitioner the benefit of any doubt."). The Government does not respond to this argument. Hamedani attaches a copy of ICE's July 9, 2025, memorandum regarding third country removals. Dkt. No. 23-1. That memorandum, together with the Government's stated intent to proceed with third-country removal, gives rise to a sufficient threat that Hamedani will face third-country removal without adequate process. *Nguyen v. Scott*, 796 F. Supp.3d 703, 736-37 (W.D. Wash. 2025).

When the Government cannot remove a noncitizen to the country specified in the removal order, it has statutory authority to designate an alternative country of removal. 8 U.S.C. § 1231(b)(2); 8 C.F.R. § 1240.12(d). But that authority is subject to important limitations. The INA prohibits the Government from removing a noncitizen to any country where the noncitizen's "life or freedom would be threatened … because of [the noncitizen's] race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A). The Government must "make a determination regarding a noncitizen's claim of fear before deporting him." *Aden v. Nielsen*, 409 F. Supp.3d 998, 1010 (W.D. Wash. 2019). And the Due Process Clause requires that these protections be meaningful, not merely formal.

Courts in this district have repeatedly held that "a noncitizen must be given sufficient notice of a country of deportation that, given his capacities and circumstances, he would have a reasonable opportunity to raise and pursue his claim for withholding of deportation." *Id.* at 1009-11. Third-country removal proceedings "are subject to the same mandatory protections that exist in removal proceedings." *Kumar v. Wamsley*, No. C25-2055-KKE, 2025 WL 3204724, at *2 (W.D. Wash. Nov. 17, 2025). Giving a petitioner an opportunity to "file a motion to reopen [his removal proceedings] … is not an adequate substitute for the process that is due process in these circumstances." *Aden*, 409 F. Supp.3d at 1010. Rather, a petitioner must be able to pursue his claim for withholding of deportation in reopened removal proceedings before an immigration judge. *Id.* These holdings "flow directly from binding Ninth Circuit precedent," and ICE's current policy on

ORDER GRANTING HABEAS PETITION - 10

third-country removals "contravenes Ninth Circuit law." *Nguyen*, 796 F. Supp. 3d at 727–28. In *Nguyen*, this Court held that *Aden* "flow[s] directly from binding Ninth Circuit precedent" and determined that ICE's current third-country removal policy "contravenes Ninth circuit law." *Id.* at 728. Other "[c]ourts in this district have recently found that due process challenges to ICE's third-country removal policy are likely to succeed on the merits." *Abubaka v. Bondi*, No. C25-1889RSL, 2025 WL 3204369, at *2 (W.D. Wash. Nov. 17, 2025) at *6 (listing cases).

This Court agrees with the holding in *Nguyen* and will grant Hamedani's request for an order to enjoin the Government from removing him to a third country without providing constitutionally and statutorily compliant notice and a meaningful opportunity to respond in reopened removal proceedings.

Accordingly, the Court will enjoin the Government from removing Hamedani to a third country without providing notice and a meaningful opportunity to respond in reopened removal proceedings.

### 3.4   The Court denies Hamedani's request for injunctive relief for future re-detention.

Hamedani requests specific injunctive relief governing re-detention, including that the Government first obtain a valid travel document, provide it to Hamedani and counsel, offer him two months to depart voluntarily, and make concrete arrangements for removal. Dkt. No. 23 at 11. But "[i]n seeking a permanent injunction, the moving party must convince the court that relief is needed," demonstrating "some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive." *Cummings v. Connell*, 316

F.3d 886, 897 (9th Cir. 2003) (quoting *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953)). Hamedani does not allege facts showing this specific relief is warranted, so his request is denied.

However, the Court will impose conditions on any future re-detention to effectuate this order. This Court has inherent authority to fashion such relief. *See Hilton v. Braunskill*, 481 U.S. 770, 775 (1987). And upon release, Hamedani will have a liberty interest in his continued freedom that due process protects. *See Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). To the extent the Government seeks to revoke Hamedani's release and re-detain him, any such decision must be supported by changed circumstances demonstrating a significant likelihood that he may be removed in the reasonably foreseeable future. The mere passage of time or repetition of the same generalized removal efforts that have not yet resulted in any country agreeing to accept Petitioner do not constitute such changed circumstances. The Government must also provide adequate notice of the reasons for any proposed re-detention and a meaningful opportunity to respond before re-detention occurs.

This standard is consistent with the regulatory framework at 8 C.F.R. § 241.13(i), which permits revocation of release and re-detention only where a noncitizen violates conditions of release or where changed circumstances create a significant likelihood of removal and requires notice and an opportunity to respond. That regulation reflects the agency's own determination of the process due to noncitizens facing re-detention, which this Court finds equally necessary here. *See, e.g., Castillo Rivas v. Bondi*, No. C26-0134-KKE, 2026 WL 295705, at *5 (W.D.

ORDER GRANTING HABEAS PETITION - 12

Wash. Feb. 4, 2026); *Uprety v. Bondi*, No. 2:25-CV-02443-JNW-MLP, 2026 WL 194227, at *4 (W.D. Wash. Jan. 26, 2026).

## 4.  CONCLUSION

The Petition for a Writ of Habeas Corpus is GRANTED IN PART and DENIED IN PART.

1.  Respondents must RELEASE Petitioner from custody within TWENTY-FOUR (24) HOURS of this order, subject to the conditions of his most recent OSUP.

2.  Respondents may not re-detain Petitioner without providing written notice of the basis for proposed re-detention in advance and a meaningful opportunity to respond, except as authorized by 8 C.F.R. § 241.13(i)(1)-(2).

3.  Respondents may not remove or attempt to remove Petitioner to a third country without providing written notice of their intent to do so and a meaningful opportunity to respond in reopened removal proceedings before an immigration judge under 8 U.S.C. § 1231(b)(3).

4.  Within FORTY-EIGHT (48) HOURS of this order, Respondents must provide the Court with a declaration confirming that Petitioner has been released from custody and informing the Court of the date and time of his release.

5.  Any fee petition should be filed within the deadlines set by the Equal Access to Justice Act, 28 U.S.C. § 2412. *See Daley v. Ceja*, 158 F.4th 1152, 1162 (10th Cir. 2025).

Dated this 18th day of February, 2026.

Jamal N. Whitehead
United States District Judge

ORDER GRANTING HABEAS PETITION - 14